SO ORDERED.

SIGNED this 25th day of June, 2015.




Robert E. Nugent
United States Chief Bankruptcy Judge

_____

PUBLISHED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LAURA B. BRANNAN, | ) | Case No. 13-12834 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LAURIE B. WILLIAMS, | ) | |
| Chapter 13 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 14-5068 |
| | ) | |
| M. BRUENGER & CO., INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Is the chapter 13 Trustee barred from avoiding a secured creditor's liens post-

confirmation when she did not object to confirmation? Does it matter whether the

1

Trustee signed an Agreed Order providing for the creditor's claims to be treated as secured or that she did so before the claims bar date and didn't have an opportunity to see, far less object to, the creditor's claim before confirmation? And if the orders bar her efforts, does § 502(j) reconsideration of the claims leave the trustee another source of relief?

Section 1327(a) binds the debtor and each creditor to a confirmed plan's provisions whether the plan treats the claim or not and whether the creditor objects, accepts, or rejects it.[1] Section 502(j) provides for the reconsideration of a claim that has been allowed or disallowed, upon a showing of cause and based upon the equities of the case.[2] Even though the plan was confirmed before the claims bar date, the Trustee signed an agreed order providing for the secured creditor's treatment and recommended that the debtor's plan be confirmed. That treatment binds her under § 1327(a) and effectively bars the Trustee's adversary proceeding to avoid the creditor's lien under § 544(b).[3] Even § 502(j) does not save the Trustee because she did not show cause why the secured creditor's claims should be reconsidered.

Finally, even if confirmation did not bar the complaint or if she had demonstrated cause to reconsider, her cause of action fails on the merits. Although the debtor did not execute a form security agreement that contained words of grant, reading all of the documents between the debtor and the creditor as a composite

---

[1] 11 U.S.C. § 1327(a).
[2] 11 U.S.C. § 502(j).
[3] 11 U.S.C. § 544(b).

transaction makes it clear that the parties intended that the creditor would sell the debtor the trucks while retaining a purchase money security interest in them. The creditor's liens attached to the collateral under KAN. STAT. ANN. § 84-9-203 (2014 Supp.).[4]

### *Jurisdiction*

This adversary proceeding is a core proceeding over which the Court may exercise subject matter jurisdiction under 28 U.S.C. § 1334 and § 157(a) and (b)(1).[5]

### *Facts*

The debtor Laura Brannan is an over-the-road trucker who was formerly employed by M. Bruenger & Co. (MBC), a Wichita trucking concern. For a long time, MBC has made a practice of locating and selling semi-tractors (trucks) to its drivers. The drivers purchase the trucks and drive loads provided by MBC. MBC deducts the drivers' weekly installment payment from their pay or fees and purportedly retains a security interest in the trucks until the sale price is paid in full. The idea is to incentivize the drivers by giving them ownership of their unit while making them independent contractors of MBC as opposed to its employees. MBC sold two semi-tractors to Ms. Brannan utilizing this financing program.

In Ms. Brannan's case, MBC documented its two transactions by the parties

---

[4] The plaintiff chapter 13 trustee Laurie B. Williams appears by her attorney Karin Amyx. The defendant M. Bruenger & Co., Inc. appears by its attorney Eric W. Lomas.
[5] *See* 28 U.S.C. § 157(b)(2)(A), (K) and (O).

3

executing a series of documents, beginning with a Weekly Installment Agreement.[6] That agreement described the truck being sold, the purchase price, the date of sale, and the weekly installment payment. Both Brannan and a representative of MBC signed it. MBC then made a Bill of Sale over to the buyer, again describing the truck by vehicle identification number, make, and year, and showing the purchase price.[7] MBC next assigned to the buyer its certificate of title for the truck, its representative executing the assignment section on the title's reverse side, assigning the truck and title to Brannan.[8] In this assignment section, Brannan checked a box indicating that the truck is subject to MBC's lien and signed a statement affirming that lien as the title form requires. As the new owner of the truck, Brannan then obtained a Title and Registration Receipt from the Kansas Division of Vehicles indicating MBC's liens on the trucks.[9] MBC followed this process for both of the trucks Brannan purchased -- a 2007 Kenworth purchased in October of 2012 and a 2009 Cascadia Freightliner purchased two months later in December.

Ms. Brannan filed her chapter 13 case on November 1, 2013.[10] The non-governmental creditor bar date was set for March 4, 2014. She filed an amended chapter 13 plan in December in which she proposed to make 60 monthly payments of

---

[6] Ex. A, p. 4 (Kenworth); Ex. E, p. 4 (Freightliner).
[7] Ex. B (Kenworth); Ex. F (Freightliner).
[8] Ex. C (Kenworth); Ex. G (Freightliner).
[9] Ex. A, p. 8; Ex. E, p. 8; Ex. D, H, and Q.
[10] Brannan scheduled MBC as a secured creditor on her bankruptcy schedules and identified the trucks as the security. *See* No. 13-12834, Dkt. 12, Schedule D.

4

$1,437.00.[11] Because she had purchased the trucks within a year of filing, her plan provided for treating MBC under the two truck purchase agreements as "one year loan creditors" under § 1325(a)(5)'s hanging paragraph.[12] She proposed minimum monthly payments on both trucks and to pay them in full. On December 27, the trustee objected to Brannan's plan for several reasons, but did not question whether MBC's claims were secured claims.[13] On January 2, 2014, MBC objected to confirmation, too, noting that the plan did not provide for a third truck, but specifically not objecting to the proposed treatment of the two trucks described above.[14]

On February 3, the parties presented an Agreed Order that resolved MBC's confirmation objection by providing for the surrender of the unmentioned truck and setting forth an agreement about the values and payment terms concerning the two trucks Brannan sought to retain.[15] The Trustee approved this Agreed Order along with counsel for debtor and MBC. The Agreed Order specifies that "Bruenger shall have a general secured claim" as to both vehicle transactions, that "it shall be allowed a general unsecured claim for any deficiency balance," and that "Bruenger *shall retain its liens* with respect to its secured claims…."[16] The amended plan was

---

[11] No. 13-12834, Dkt. 26.
[12] 11 U.S.C. § 1325(a)(5). The hanging paragraph is an unnumbered paragraph that immediately follows § 1325(a)(9) but refers to treatment of certain allowed secured claims provided for by the plan under § 1325(a)(5).
[13] No. 13-12834, Dkt. 33.
[14] No. 13-12834, Dkt. 34.
[15] No. 13-12834, Dkt. 43.
[16] *Id.* at ¶ 6.

5

confirmed and a confirmation order entered on February 19.[17] MBC filed its proofs of claim on March 4, 2014.[18] After the Trustee reviewed the proofs of claim, she filed this adversary proceeding under § 544 to avoid and preserve what she alleges to be an unattached security interest in each of the trucks. The parties provided pre- and post-trial briefs and the Court held a trial on March 17, 2015.

*Analysis*

The Trustee claims that MBC's purported security interests in the two trucks never attached because Laura Brannan never "authenticated" a security agreement as is required by KAN. STAT. ANN. § 84-9-203(b), Kansas' version of revised Article 9 of the Uniform Commercial Code. MBC responds that while no form security agreement was made, a reading of all the transaction documents makes clear that the parties intended to and did create security interests that attached to the Freightliner and Kenworth to secure MBC's claims. But MBC also claims that the Trustee's execution of the Agreed Order resolving MBC's objection to confirmation and the Confirmation Order itself bar the Trustee's lien avoidance action.

*Section 1327(a) Finality*

Section 1327(a) provides that confirmation of the debtors plan is binding on the debtor and every creditor (whose interests the Trustee represents) whether or not the plan treats their claims or they have objected to or accepted the plan.[19] In this

---

[17] No. 13-12834, Dkt. 49.
[18] *See* Proof of Claim Nos. 18 and 19.
[19] 11 U.S.C. § 1327(a). *See In re Talbot,* 124 F.3d 1201 (10th Cir. 1997) (res judicata effect of § 1327(a) barred IRS from extracting payments for penalties and interest

6

case, the confirmed plan plainly provides that MBC's claims are secured by the trucks and for those claims to be paid as specified in the Agreed Order. MBC argues that § 1327(a) effectively codifies the doctrine of res judicata as to the allowance and treatment of claims once a plan is confirmed and that, as the United States Supreme Court has held in *Espinosa*, parties to a plan are stuck with its contents once it's confirmed, even if the applicable plan provisions are contrary to bankruptcy or other law.[20] The Trustee responds that § 502(j) carves out an exception to § 1327(a)'s preclusive effect by permitting her to seek reconsideration of MBC's allowed claims for cause.

The Trustee notes that her approval of the Agreed Order and confirmation recommendation both occurred before MBC filed its proofs of claim. She says that without the proofs of claim being filed, there wasn't any way for her to know that MBC's liens were flawed and that she signed the Agreed Order because this Judge requires that she be made privy to and sign off on all orders in chapter 13 cases that affect her duties.[21] She also argues that when plans are confirmed in this District, confirmation does not finally allow or disallow claims and that any claim treated in

---

not provided for under confirmed plan in exchange for release of lien on residence debtors sought to sell); *In re Mersmann,* 505 F.3d 1033, 1047 (10th Cir. 2007) (binding effect of confirmed chapter 13 plan serves the same purpose as the general doctrine of res judicata), *abrogated on other grounds by United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010).
[20] *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 276 (2010).
[21] This requirement insures that debtors and creditors do not enter into agreements that affect the Trustee's administrative duties without her knowledge.

7

the plan can be disallowed even after confirmation.[22]

The courts are somewhat divided on whether confirmed plans preclude revisiting the validity of liens or claims. Some hold that they do not. In *In re Johnson*, when the trustee objected to a creditor's secured claim after plan confirmation, that creditor raised § 1327(a) as a bar to the objection.[23] Noting that the district's form plan neither allows nor disallows claims, and that meaningful claim review by the trustee is impossible in a district where plans are routinely confirmed on the date of the debtor's first meeting of creditors, well before the claims bar date, the court sustained the trustee's claim objection. The court explained that the plan in question is a "pot" plan, meaning that the debtor is obligated for a series of fixed payments that will fund a liquidated amount to be distributed to the creditors treated in the plan. Implicit in that sort of plan is the idea that if the trustee successfully objects to a claim (or avoids a secured creditor's lien), part or all of that pot will be distributed differently. In other words, what § 1327(a) makes "final" about a confirmation order is not what a particular creditor will get, but what the debtor will pay.[24] According to the *Johnson* court, holding otherwise would greatly damage the speedy confirmation process by slowing it down while the trustee examined claims before recommending confirmation.

Other courts conclude that the entry of a confirmation order precludes any

---

[22] The trustee cites 11 U.S.C. § 502(j) which provides for reconsideration of an allowed or disallowed claim for cause according to the equities of the case.
[23] *In re Johnson,* 279 B.R. 218 (Bankr. M.D. Tenn. 2002).
[24] *Id.* at 221-22.

8

issue that is fundamental to the order. In *In re Reid*,[25] a chapter 13 trustee sought to avoid a mortgage on the debtor's home after the debtor's plan was confirmed. The plan specifically called for the debtor to cure and maintain mortgage payments and for the creditor to retain its lien. Only then did the trustee file an adversary proceeding to avoid the mortgage. The court began with the familiar rule that an issue is precluded if it has been resolved by a final judgment on the merits in an action involving the identical parties that considered the same or similar cause of action. In *Reid*, the court concluded that the chapter 13 confirmation order was a final order on the merits, that both the trustee and the creditor were parties to the confirmation process that generated the order, and that the plan had addressed the creditor's claim. All three of the components of res judicata were thus met. The court further noted that even though the trustee is not specifically named in § 1327(a), "it is difficult to imagine how the plan can be final if it is not final as to [the trustee]."[26] The *Reid* opinion cites a number of cases that have so held.

The Eleventh Circuit has also held that confirmation orders are final and preclude actions like the one here. In *Hope v. Acorn Financial, Inc.*, a chapter 13 trustee (who, unlike the trustee here, was fully aware of a defect in the secured creditor's lien) failed to object to confirmation of the debtor's plan, but then sought to avoid the lien as does the trustee here.[27] The trustee argued that the absence of a

---

[25] *Bankowski v. Wells Fargo Bank, N.A. (In re Reid),* 480 B.R. 436 (Bankr. D. Mass. 2012).
[26] *Id.* at 445, n. 9 (citing cases) and 446.
[27] 731 F.3d 1189 (6th Cir. 2013).

9

reference to the trustee in § 1327(a) meant that the trustee was not bound by the confirmation order as the debtor and particular creditors are. The panel reasoned that § 1327(a) must be read along with other parts of chapter 13 like § 1325(a)(2) and (c) that require the trustee to make distributions under the confirmed plan and § 1329(a) which authorizes the trustee to request post-confirmation modification of a plan. Quoting the *Reid* court, the panel stated, "These provisions would be 'unnecessary if the confirmed plan did not already bind the trustee as it does the debtor.'"[28] Moreover, the panel noted, the role of the trustee is to serve the interests of the creditors as a body.[29] Consequently, the trustee would be bound by provisions that bind the creditors. The panel also noted that its decision should be limited to its facts and particularly to the fact that the trustee knew of the lien's flaw, but apparently did not act on that knowledge before confirmation.

The Trustee's complaint here is not based on information that was unavailable to her before confirmation. As the Trustee affirmatively consented to the debtor's and creditor's proposed treatment of the claim as secured and then recommended the amended plan be confirmed, it is hard to understand how she should not be bound by that consent. While it may not be reasonable to expect the trustee to conduct discovery as to every secured claim, it is equally untenable to expose the debtor and secured creditors to the possibility of having to defend their secured status even after

---

[28] *Id.* at 1193.
[29] *Id.*, citing *Overbaugh v. Household Bank, N.A. (In re Overbaugh),* 559 F.3d 125, 129-30 (2nd Cir. 2009).

10

the trustee has consented to its treatment as a secured claim. That would seriously undermine the creditors' confidence that the resolution they have reached, and that the court has blessed, will be final and enforceable. As one bankruptcy court noted in addressing a post-confirmation challenge to the validity of a secured claim:

> . . . had the Trustee believed that the Mortgage was avoidable, he would not have recommended confirmation of a plan calling for payment of a one-percent dividend to general unsecured creditors. . . . When reviewing plans for confirmation, the standing Chapter 13 trustee is charged with calculating the value of the non-exempt assets and disposable income available in the estate for payment, over time, to unsecured creditors.[30]

Here, the Trustee went one step further when she approved the Agreed Order. The secured status of MBC was an issue intrinsic to the plan as confirmed. The Trustee's action to avoid that status is barred by the res judicata effect of § 1327(a).

### *Reconsideration of Allowed Claims, § 502(j)*

The Trustee's fallback argument is that § 502(j) authorizes the Court to reconsider an allowed claim for cause even after confirmation.[31] The first question is

---

[30] *In re Crum,* 479 B.R. 734, 743 (Bankr. S.D. Ohio 2012) (applying § 1327 and the doctrine of judicial estoppel to bar the chapter 13 trustee's post-confirmation avoidance complaint based upon a discoverable defect in the creditor's mortgage; facts bearing on extent of creditor's lien were available prior to confirmation). *See also Celli v. First Nat'l Bank of N. New York (In re Layo),* 460 F.3d 289, 295 (2d Cir. 2006) (the trustee has both a motive and opportunity to confirm the status of real estate liens affecting the debtor's estate at or before confirmation of the plan.).

[31] *See In re Willoughby,* 324 B.R. 66 (Bankr. S.D. Ind. 2005) (*Till* decision handed down after confirmation of plan constituted cause for reconsidering cram down interest component of creditor's claim; fact that plan had been confirmed did not preclude reconsideration of claim.); *Amtech Lighting Services Co. v. Payless Cashways (In re Payless Cashways, Inc.),* 230 B.R. 120, 137 (8th Cir. BAP 1999) (reconsideration can be requested at any time, even after expiration of the time to

11

whether the Agreed Order and the Confirmation Order operated to allow MBC's claim as secured. Some courts hold that claims are deemed allowed by a confirmation order that is entered without objection.[32]

If the Agreed Order and Confirmation Order sufficed to allow MBC's claims, the Trustee could still seek their reconsideration for cause. Another judge in this District has held that the classification of a secured claim may be reconsidered post-confirmation when the creditor's collateral is destroyed.[33] Most reconsideration cases involve an unexpected post-confirmation change in circumstances, fraud, or newly discovered evidence as the "cause" for reconsideration.[34] There is nothing the Trustee knows now that was unascertainable or concealed by the creditor beforehand. Nor is there a suggestion of misconduct on MBC's part. The Trustee has shown no "cause"

---

appeal); *In re Gomez,* 250 B.R. 397 (Bankr. M.D. Fla. 1999) (confirmation of plan does not preclude reconsideration of claim); *Matter of Zieg,* 206 B.R. 974 (D. Neb. 1997) (confirmed plan is not res judicata as to a motion for reconsideration).
[32] *See In re Gomez,* 250 B.R. 397, 401; *In re Bernard,* 189 B.R. 1017, 1021, n. 4 (Bankr. N.D. Ga. 1996)(the "implicit decision of allowance took place at confirmation").
[33] *See In re Lane,* 374 B.R. 830 (Bankr. D. Kan. 2007) (post-confirmation destruction of car securing creditor's 910 claim; reclassified creditor's deficiency claim as general unsecured claim)
[34] *See In re Mellors,* 372 B.R. 763 (Bankr. W.D. Pa. 2007) (post-confirmation change of circumstances); *In re East Hill Mfg. Corp.,* 214 B.R. 536 (Bankr. D. Vt. 1997) (no cause shown were information regarding allowed claim was available to debtor when its objection to claim was heard); *In re Arden Properties, Inc.,* 248 B.R. 164 (Bankr. D. Ariz. 2000) (denying reconsideration where information was not newly discovered evidence); *In re Farley, Inc.,* 211 B.R. 889 (Bankr. N.D. Ill. 1997) (previously discoverable and available evidence may not be considered in context of motion to reconsider); *International Yacht and Tennis, Inc.,* 922 F.2d 659 (11th Cir. 1991) (fraud). *See also* 4 Collier on Bankruptcy, § 502.11[5] (16th ed.) (newly-discovered evidence after allowance of claim should be cause for reconsideration).

12

to reconsider MBC's claims.[35]

### *Composite Documentation Constitutes an Authenticated Security Agreement and Attachment of Lien*

Even if there were reason to reconsider MBC's secured claims, the "equities" do not support the Trustee's assertion that MBC's documents failed to create enforceable security interests in the trucks because the law of secured transactions

---

[35] In addition, several courts have held that post-confirmation reconsideration of a claim may not be used to reclassify a creditor's claim from secured to unsecured which is essentially what the Trustee is after here. *See e.g. Celli v. First Nat'l Bank of N. New York (In re Layo),* 460 F.3d 289 (2d Cir. 2006) (confirmation order was res judicata where trustee attempted to avoid lien following confirmation; can't reclassify secured claims post-confirmation);*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks, II, Ltd.),* 898 F.2d 1544, 1553 (11th Cir. 1990), *cert. denied,* 498 U.S. 959 (1990) (an objection that challenges the classification of a claim must be made before confirmation of the chapter 13 plan or it will be deemed allowed by the confirmation order); *In re Beam,* 510 B.R. 399 (Bankr. N.D. Ga. 2014) (debtors were barred by confirmed plan from reclassifying secured claim to strip off creditor's lien); *In re Crum,* 479 B.R. 734 (Bankr. S.D. Ohio 2012) (chapter 13 trustee whom recommended confirmation of plan was precluded by res judicata effect of confirmation order from seeking to avoid lender's mortgage lien; allowing trustee to belated challenge secured claim would result in unfair detriment to mortgage lender); *In re Berrouet,* 469 B.R. 393 (Bankr. N.D. Ga. 2012) (confirmation order was res judicata on classification and treatment of claims provided in plan and as to issues that were or could have been brought prior to confirmation); *In re Rutt,* 457 B.R. 97 (Bankr. D. Colo. 2010) (confirmed plan is res judicata to all issues that were or could have been brought prior to confirmation); *In re Wilson,* 409 B.R. 72 (Bankr. W.D. Pa. 2009) (chapter 13 debtors not entitled to reconsideration of order allowing purchase money vehicle lender's claim as fully secured where plan treated as fully secured and debtors did not indicate any intent to challenge value of vehicle and strip down lien; *In re Coffman,* 271 B.R. 492 (Bankr. N.D. Tex. 2002) (reconsideration of claim cannot be used to reclassify claim; debtors bound by confirmed plan); *In re Clark,* 172 B.R. 701 (Bankr. S.D. Ga. 1994) (doctrine of res judicata precluded debtor's objection to treatment of creditor's claim as secured; proof of secured claim must be allowed or disallowed before plan confirmation or the claim must be deemed allowed for purposes of the plan).

13

makes clear that they do.[36] Many courts have read composite agreements like the ones in this case to create enforceable security interests even in the absence of "magic words" of grant because the agreements' provisions manifested the parties' intent to create security interests in the collateral. A reading of the documents in pari materia makes that clear here. Though the Weekly Payment Agreement lacks words of grant, it shows that the parties intended to enter into a sale agreement. So does the Bill of Sale. While those agreements lack references to the creation or retention of security interests in the trucks, others do not. First, Ms. Brannan signed and acknowledged on the reverse side of the titles (assignment of title) that she was the buyer of the trucks and that they each were subject to MBC's lien.[37] Second, she signed an application for title indicating that MBC was a "1st Lienholder."[38] Finally, MBC is identified on the Title and Registration Receipts as a lienholder on the trucks.[39] The sum of these documents, taken with Mr. Bruenger's credible testimony as to the custom and usages of MBC as to this long-standing financing program satisfy the

---

[36] Even if the Trustee were able to show "cause," she must also demonstrate that the equities of the case warrant disallowance of MBC's secured claims. *See* Fed. R. Bankr. P. 3008 and § 502(j); *Municipality of Carolina v. Gonzalez (In re Gonzalez),* 490 B.R. 642, 651 (1st Cir. BAP 2013) (There is no basis to reconsider an order disallowing a claim according to the equities of the case without cause); *In re Rayborn,* 307 B.R. 710, 720 (Bankr. S.D. Ala. 2002) (reconsideration is a two-step process: first, cause must be shown and second, the court must decide whether the equities dictate allowance or disallowance of the claim).
[37] Ex. C (Kenworth), Ex. G (Freightliner). On both titles, Brannan "swear[s] or affirms[s] that all liens . . . are listed" and acknowledges "severe penalties for making false statements under oath."
[38] Ex. D (Kenworth); Ex. H (Freightliner).
[39] Ex. A (Proof of Claim 19), p. 8; Ex. E (Proof of claim 18), p. 8.

14

Court that Brannan granted MBC purchase money security interests in the Freightliner and the Kenworth.

KAN. STAT. ANN. § 84-9-203 requires that a debtor "authenticate" a security agreement in order to create a security interest, but no particular form of a security agreement is required. Instead the agreement must create a security interest as defined in § 84-1-201(b)(35).[40] Indeed a "collage" or "composite" group of documents may stand as evidence of such an agreement.[41] Kansas contract law recognizes the collage or composite document theory.[42] As one treatise on secured transactions has noted, requiring formal words of grant "smack[s] of the antiquated formalism the

---

[40] KAN. STAT. ANN. § 84-9-102(a)(73) (2014 Supp.) (defining a "security agreement"); § 84-1-201(b)(35) (2014 Supp.) (defining "security interest" as an interest in personal property or fixtures which secures payment or performance of an obligation). *See also City of Arkansas City v. Anderson,* 242 Kan. 875, 883-86, 752 P.2d 673 (1988) (assignment created a security interest); *Wellsville Bank v. Nicolay,* 7 Kan. App. 2d 172, 178, 638 P.2d 975 (1982) (Assignment was valid security agreement where it satisfied statutory requirements of providing for a security interest, identified the collateral, and bore debtor's signature.).
[41] 1 Barkley Clark and Barbara Clark, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE, §2.02[1][d] (3d ed. 2015) (hereafter "Clark").
[42] *See City of Arkansas City, supra* at 883-84 (all documents associated with assignment would be read together to ascertain the true meaning of the assignment and intent of the parties to the assignment to determine whether it created a security interest); *Hall v. Mullen,* 234 Kan. 1031, 1038, 678 P.2d 169 (1984) (two or more instruments executed by same parties as part of same transaction and subject matter will be read together to determine parties' intent); *In re Cunningham,* 489 B.R. 602 (Bankr. D. Kan. 2013) (considering credit application, cardholder agreement, and several sales receipts under composite document theory but concluding documentation was "facially insufficient" to create security interest in consumer goods purchased by debtors for lack of a sufficient description of the consumer goods in the credit application and lack of debtors' signature and security interest on the sales receipts).

15

drafters [of Article Nine] were trying to avoid."[43] In this case, these documents, when read together, unequivocally "contemplate[ ] objective indicia of the possibility of an underlying actual agreement," thus serving the purposes of a security agreement.[44] They suggest the parties' mutual intention to create or retain a lien and they describe that which is encumbered. If Brannan didn't intend to confer a lien, why did she sign and check the lien box on the assignment of title? And why did she designate MBC as a lienholder when she applied for a title? The documents here indicate at least the "possibility of an underlying agreement" if not much more.[45]

### *Conclusion*

The Trustee's lien avoidance complaint is barred by the res judicata effect of the Agreed Order on MBC's claims and the confirmed chapter 13 plan under § 1327(a). She did not demonstrate sufficient cause to reconsider MBC's secured claims under § 502(j). And, if she had, her challenge to MBC's secured status would be denied on the merits under the composite document theory because the sale and title

---

[43] Clark, §2.02[1][c] at 2-21.
[44] 4 White & Summers, UNIFORM COMMERCIAL CODE, § 31-3 (6th ed. 2010).
[45] *See In re Giaimo,* 440 B.R. 761 (6th Cir. B.A.P. 2010) (considered together, application for certificate of title and certificate of title, constituted security agreement); *In re Jacobs,* 2006 WL 4451566 (Bankr. D. Idaho Feb. 10, 2006) (debtors' application for certificate of title for car coupled with contemporaneous seller's invoice constituted a valid security agreement; application identified the collateral, instructed the state to issue a title showing seller as a lienholder, and was signed by debtor); *Roan v. Murray,* 556 N.W.2d 893, 895-96 (Mich. Ct. App. 1996) (debtor's application for a certificate of title, standing alone, was sufficient to create a security agreement); *Baystate Drywall, Inc. v. Chicopee Sav. Bank,* 385 Mass 17, 429 N.E.2d 1138, 1142 (1982) (application for transfer of title listing lienholder meets writing requirement for security interest to attach).

Case 14-05068    Doc# 26    Filed 06/25/15    Page 16 of 17

documentation for both truck transactions amount to authenticated security agreements that granted MBC enforceable security interests. Its liens attached to the trucks under KAN. STAT. ANN. § 84-9-203.

Judgment shall be entered in favor of MBC on the Trustee's adversary complaint. A Judgment on Decision will issue this day.

# # #